**JUNEAU SPRUCE CORPORATION v. INTERNATIONAL LONGSHOREMEN'S & WAREHOUSEMEN'S UNION et al.**

No. 5996–A.

United States District Court
D. Alaska, First Division, at Juneau.
March 11, 1949.

Faulkner, Banfield & Boochever, of Juneau, Alaska, for plaintiff.

Henry Roden and William L. Paul, Jr., both of Juneau, Alaska, for defendants.

FOLTA, District Judge.

This action is brought under Section 303 of the Act of June 23, 1947, 61 Stat. 158, 29 U.S.C.A. § 187, commonly known as the Taft-Hartley Act, to recover damages in the sum of $193,000. The complaint alleges that the defendants, by means of unlawful picketing and coercion, have caused plaintiff's employees to refuse to perform any services since April 10, 1948, for the purpose of accomplishing objects prohibited by that section, in consequence of which plaintiff has been compelled ever since to suspend its mill operations.

The defendants have demurred to the complaint on the ground that jurisdiction under the act is limited to the courts defined in 28 U.S.C.A. § 451—that is, the constitutional courts.

Section 303(b) of the act provides:

"Whoever shall be injured in his business or property by reason or any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of section 301 hereof without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

The jurisdiction of this court is that vested in it by the Act of June 6, 1900, 31 Stat. 322, as amended, 48 U.S.C.A. § 101, the material provision of which is as follows:

"There is established a district court for the District of Alaska, with the jurisdiction of district courts of the United States and with general jurisdiction in civil, criminal, equity, and admiralty causes".

Undoubtedly the term "district court of the United States" standing alone includes only the constitutional courts. International Longshoremen's Union v. Wirtz, 9 Cir., 170 F.2d 183, 185. But it does not follow that the term must be so construed regardless of its contextual setting or without due regard to the purpose or policy of the statute in which it is used. The Maret, 3 Cir., 145 F.2d 431; Page v. Burnstine, 102 U.S. 664, 26 L.Ed. 268. Moreover, if it is used in an inconsistent or uncertain manner, the legislative intent, rather than its literal import, must govern.

An examination of the act here involved discloses that this term is not used with entire consistency in the act. This may of course be attributed to the process of amendment. which the act underwent during the course of its consideration and passage. But be that as it may, it seems impossible to give the term "district court of the United States", as used in the act, a sensible construction except on the assumption that it was used in a comprehensive sense rather than as a term of art or as defined in Section 451, Title 28 U.S.C.A., and such an assumption seems warranted in view of the avowed purposes of the act. Certain evils are found to exist, Sections 1 and 201, and remedies deemed appropriate are provided. While its over-all objective is the protection of commerce, it also declares the fundamental labor policy for the nation. The text of the act leaves no doubt that its provisions were intended to be coterminous with the commerce of the nation, which is defined by Section 2(6), 29 U.S. C.A. § 152(6), as follows:

"The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country", and that it was to have general application.

Moreover the Wagner Act, 29 U.S.C.A. § 151 et seq. now incorporated in the Taft-Hartley Act as Title 1, was held to be ap-

plicable to the territories in N.L.R.B. v. Gonzalez Padin Co., 1 Cir., 161 F.2d 353, Alaska Juneau Gold Mining Co., 2 N.L.R.B. 125, and Alaska Salmon Industry, 33 N.L.R.B. 727. Since these acts have a common purpose, it is reasonable to assume that Congress intended to make provisions clearly designed to effectuate the national policy applicable to the Territory. Indeed, the substantive provisions of the act clearly apply to the territories. No reason is perceived why its remedial provisions should be narrower in scope, notwithstanding the use of the term "district court of the United States". Nor is there anything in the legislative history of the act to warrant a different conclusion.

The problem would, therefore, appear to be more than one of mere terminology. Congressional intent rather than definition becomes the turning point in the case. At this juncture, it may be useful to refer briefly to some of the consequences that would follow in the wake of situations that would likely be encountered in the administration of the act, and to examine the defendants' contention in the light of such consequences.

One of the evils aimed at is the jurisdictional dispute, such as is involved in this controversy. Not only is this defined to be an unfair labor practice, Section 8(b) (4), and condemned in Section 303(a), but specific provision is also made by Section 10($l$) for injunctive relief upon the aplication of the National Labor Relations Board, and a right of action for damages is given by Section 303(b) to any person injured in his business or property as a result thereof. But, although the restraints imposed on jurisdictional strikes and secondary boycotts apply to commerce in the state, the District of Columbia and the territories, yet if the defendants' construction of the term "district court of the United States" is adopted, it would follow that, although, if a jurisdictional strike or secondary boycott is maintained in any of the states, the National Labor Relations Board could resort to injunctive relief and any person injured could sue for damages, yet if such an act takes place in the District of Columbia, the person injured could not sue, and, if it takes place in the territories, not only is there no private remedy but the Board itself is not entitled to injunctive relief to maintain the status quo pending a determination of the controversy.

Results of a like character would follow any attempt to enforce other provisions of the act. Thus, the enforcement of the Board's cease and desist orders, made under Section 10(c), is governed by Section 10(e), which provides:

"The Board shall have power to petition any circuit court of appeals of the United States (including the United States Court of Appeals for the District of Columbia), or if all the circuit courts of appeals to which application may be made are in vacation, any district court of the United States (including the District Court of the United States for the District of Columbia), within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business * * *."

Under the construction urged by the defendants the Board would be deprived of any forum in which to enforce its orders, so far as the Territory of Alaska is concerned, if the Court of Appeals for the 9th Circuit were in vacation. And a similar result would follow if the Board should proceed under Section 10(j). But that is not all. Provision is made in Section 11(2) for the enforcement of the process of "any district court of the United States or the United States courts of any Territory or possession, or the District Court of the United States for the District of Columbia". But in Section 302(e), empowering the district courts of the United States and the United States courts of the territories and possessions to enjoin violations of the act, the District of Columbia is omitted, so that, literally construed, violations of the act may be enjoined everywhere, including the possessions, where it is clear under Section 2(6) that the act has no application whatever, except in the District of Columbia. It is thus apparent that, if defendants' view of the law is correct, the courts are empowered under Sections 11(2) and 302(e) to enforce their orders by subpoena and injunction in the possessions, where the substantive provisions of the act have no application, but not by injunction in the

District of Columbia where obviously such provisions are in force and effect.

It would seem, therefore, that if such consequences are to be avoided the statute must be given such a construction as will be reasonable and consistent with its provisions. That it was not the intent of Congress to limit jurisdiction to the constitutional courts seems reasonably clear, and indeed authority for this view is not wanting. Thus in United States v. Brotherhood of Locomotive Engineers, D.C., 79 F. Supp. 485, and United States v. International Union, United Mine Workers, D.C., 77 F.Supp. 563, injunctions were issued by Judge Goldsborough of the District Court of the United States for the District of Columbia under a provision of Section 208(a) granting such power to "any district court of the United States". Manifestly, if defendants' view is correct, that Court was without power to act in these cases. But the decision which in my opinion is decisive of this controversy is Federal Trade Commission v. Klesner, 274 U.S. 145, 47 S. Ct. 557, 71 L.Ed. 972, in which the term "circuit court of appeals of the United States" in the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., was held, in an almost identical factual situation, to comprehend the Court of Appeals for the District of Columbia.

Other considerations lend support to the construction urged by the plaintiff, not the least of which is that the very lack of uniformity and consistency in the use of the term "district court of the United States" throughout the act itself shows not only the futility of construing the term in a literal or restricted sense, but also that such could not have been the Congressional intent. It is undoubtedly the duty of the Court to ascertain the intent of Congress from the words used in the act, in the light of its aims, and to extend its operation to broader limits than its words appear to import if the Court is satisfied that their literal meaning would deny application of the act to cases which it was the intent of Congress to bring within its scope. The statute is remedial. It should be so construed as to prevent the mischief and advance the remedy.

In view of the fact that this Court is vested with the jurisdiction of a district court of the United States and my conclusion that it was the legislative intent that the act should have a general and uniform application, I am constrained to hold that the term "district court of the United States," as used in the act, comprehends this Court. Accordingly, the demurrer should be overruled.