## UNITED STATES v. KING.

### Civ. A. No. A-8472.

District Court, Alaska
Third Division, Anchorage.
Jan. 27, 1954.

Arthur D. Talbot, former Asst. U. S. Atty., Anchorage, Alaska, for plaintiff.

Ed V. Davis, Anchorage, Alaska, for defendant.

McCARREY, District Judge.

This matter comes before the Court for determination based upon a Motion to Dismiss filed by the plaintiff under Fed.Rules Civ.Proc. Rule 12(b)(2), 28 U.S.C.A. "* * * lack of jurisdiction".

After argument in open court, the plaintiff submitted a short brief comprised of points and authorities in support of his motion to dismiss. The defendant did not submit any brief; however, the Court has done considerable research and study on the matter as this case presents a very comprehensive problem which does and will have far reaching effects upon this court, both in this case as well as allied cases which may be filed in the future.

### I. Facts

This is a suit brought by the United States by and on behalf of the Bureau of Land Management for the recovery of a 1949 Dodge express power wagon, or, in case delivery unimpaired cannot be had, for the sum of $2,750, the value of the property. Defendant answers that

the vehicle is being held pursuant to a statutory lien on account of work and labor and materials furnished the property; that, at the request of the Bureau of Land Management, on August 11, 1952, defendant towed the vehicle to his garage in Palmer after a wreck on the Palmer Highway; that the Bureau of Land Management refused to pay the bill, claiming that one Ralph B. Horton had agreed to assume its payment; and that there is now due and owing the sum of $1,302.56 for repairs, for which defendant counterclaims.

Plaintiff moves to dismiss the counterclaim for failure of jurisdiction over the subject matter. It asserts that it appears on the face of the counterclaim that this court is without jurisdiction to entertain the counterclaim for the reason that it is in substance and effect against the United States, which has not consented to be sued or waived its immunity from suit. The motion is based (1) on the assertion that the Tucker Act, under which the suit (counterclaim) is brought does not confer jurisdiction on the District Court for the Territory of Alaska to entertain suits against the government, and, (2) that the Tucker Act is not broad enough to permit recovery upon counterclaims.

### Argument

As stated, defendant's counterclaim is asserted under the Tucker Act of March 3, 1887, 24 Stat. 505, which, as supplemented and re-enacted is now section 1346(a) of Title 28 U.S.C. This section provides:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\*    \*    \*    \*    \*    \*

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

For sixty-five years following the adoption of the Constitution, Congress determined various claims against the government itself, or committed such determination to the executive departments. By Act of Congress on February 24, 1855, 28 U.S.C.A. § 1491, the Court of Claims was created as a legislative court to hear suits against the United States in claims founded upon the Constitution, any Act of Congress, any regulation of an executive department, any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. And, finally, in 1887, the district courts were given concurrent jurisdiction with the Court of Claims as to claims not exceeding $10,-000, 54 Am.Jur. United States Courts, section 319, page 950. One of the questions before us is whether the District Court for the Territory of Alaska has this concurrent jurisdiction.

Plaintiff's motion to dismiss is, in part, based upon the reasoning that the Tucker Act does not give the District Court for the Territory of Alaska jurisdiction to hear contract claims. They state, and correctly so, that the United States is immune from suit unless Congress has consented to such suit, and that statutes granting such consent must be strictly construed in favor of the United States. They argue that since section (b) of section 1346, referring to tort claims, gives jurisdiction to the "district courts, together with the District Court for the Territory of Alaska," and since sub-section (a) of the section simply gives contract jurisdiction to the "district courts", Congress, when it re-enacted the Judicial Code in 1948 and placed the formerly separated contract and tort provisions together, must have contemplated a definite distinction.

In further support of their argument that "the district courts" as employed in section 1346(a) does not include the District Court for the Territory, plaintiff refers us to sections 81 and 451 of the Judiciary Code. Section 81 et seq., divide the various states and some of

the territories into judicial districts, but Alaska is not mentioned. Thus, the new judicial code, by Section 81 et seq., creates judicial districts for Hawaii and Puerto Rico, but not for Alaska, so that the Hawaiian and Puerto Rican courts are within the enumeration of district courts, but Alaska is not. Section 451 states:

"As used in this title * * * The terms 'district court' and 'district court of the United States' mean the courts constituted by chapter 5 of this title." "This title", as used in said section 451, must refer to Title 28, the Title in which the Tucker Act appears; and Alaska has no court constituted by said Chapter 5.

■■■■ As stated in *Mookini v. United States*, 303 U.S. 201, 205, 58 S.Ct. 543, 82 L.Ed. 748 and *Juneau Spruce Corporation v. International Longshoremen's & Warehousemen's Union*, D.C., 83 F.Supp. 224, 225:

"the term 'district court of the United States' standing alone includes only the constitutional courts." Such words describe courts created under Article III of the Constitution. The Alaskan court, of course, is not a constitutional, but a legislative court. It has been so held since *McAllister v. United States*, 141 U.S. 174, 11 S.Ct. 949, 35 L.Ed. 693. According to *Ex parte Bakelite Corporation*, 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789, the test is the particular power under which the court was created and its jurisdiction conferred. If created under section 2 of Article III of the Constitution, it is a constitutional court. Territorial courts are not created under that power, but by virtue of the plenary municipal authority that Congress possesses over territories, or under the constitutional clause permitting the making of needful rules and regulations as to territories, Article IV, section 3 of the Constitution.

However, even though the term "district court", or "district court of the United States" is commonly considered as referring to constitutional courts, and even though the Alaskan court is not a constitutional court, section 101 of Title 48, U.S.C.A., establishes a district court for the District of Alaska with the jurisdiction of district courts of the United States. Since the Tucker Act grants jurisdiction of contract claims against the United States to district courts, it is arguable that the district court of the Territory of Alaska has the same jurisdiction by virtue of said section 101. Further, before interpreting the phrase as referring only to constitutional courts, regard must be had to the contextual setting and purpose of the act in question.

Much litigation has arisen concerning the particular question of whether the phrases, "Courts of the United States", "District Courts", and "District Courts of the United States", as used in particular federal statutes, include the District Court for Alaska. Some of these cases hold that it is not so included. See *McAllister v. United States*, 141 U.S. 174, 11 S.Ct. 949, 35 L.Ed. 693; *United States v. Bell*, D.C., 108 F.Supp. 777. Others hold that it is so included. See *Juneau Spruce Corporation v. International Longshoremen's & Warehousemen's Union*, D.C., 83 F.Supp. 224; *Ex parte Cooper*, 143 U.S. 472, 12 S.Ct. 453, 36 L.Ed. 232; *United States v. Barbeau*, D.C., 92 F.Supp. 449. In a 1951 case, *Reese v. Fultz*, D.C., 96 F. Supp. 449, 450, Judge Dimond states:

"That the District Court for the District of Alaska is not and never has been a 'court of the United States' is too well settled to justify debate, Title 28 U.S.C.A. § 451 * * *. The District Court for the District of Alaska was created by the first paragraph of Section 4 of the Act approved June 6, 1900, 31 Stat. 322. * * * On June 25, 1948, the President approved an Act of Congress to revise, codify and enact into law, Title 28 of the United States Code, entitled 'Judicial Code and Judiciary', and in Section 9, of that act is to be found a revision and amendment of Section 4 of the Act of June 6, 1900, the relevant portion of which, as so amended * * * is quoted below: 'There is established a district court for the District

of Alaska, with the jurisdiction of district courts of the United States * * *.' The conclusion is inescapable that in thus reenacting the first paragraph of Section 4 of the Act of June 6, 1900 * * * Congress must be presumed to have intended what it said, and what it said is that the District Court of the District of Alaska possesses the jurisdiction of the District Courts of the United States."

Several of the most recent Alaska Cases on the point warrant particular discussion. In United States v. Barbeau, 92 F.Supp. 449, a decision rendered by Judge Dimond in 1950, the Court held that the District Court for the Territory of Alaska, though not a court of the United States, had the jurisdiction of a court of the United States within the meaning of Title 28, Section 1915 U.S.C., which allowed such court to authorize proceedings in forma pauperis. This conclusion was based on the fact that the District Court for the Territory of Alaska had the jurisdiction of a court of the United States by virtue of Section 101, Title 48, U.S.C., which established a district court for the District of Alaska, "with the jurisdiction of district courts of the United States". But, in United States v. Bell, 108 F.Supp. 777, Judge Dimond, in 1952, held that the District Court of Alaska was not a court of the United States within the meaning of, 18 U.S.C. § 1503, a federal criminal statute which provides punishment for corruptly endeavoring to influence, intimidate, or impede any witness, in any court of the United States. This conclusion was based on the definition of court of the United States in Title 28, section 451, U.S.C., which does not include the District Court for Alaska. In this decision, reference was not made to Title 48, section 101.

Juneau Spruce Corporation v. International Longshoremen's & Warehousemen's Union, decided by Judge Folta in 1949, 83 F.Supp. 224, is a well conceived and competently executed opinion on the point. In that case, the question was whether the provision of the Taft-Hartley Act, 29 U.S.C.A. § 141 et seq., permitting any person injured by violation thereof to sue in any " 'district court of the United States' " permitted such person to sue in the district court for the Territory of Alaska. Judge Folta held that it did. He stated that though the quoted term standing alone included only constitutional courts, regard must be had to the contextual setting, the purpose of the statute, and—when used in an inconsistent or uncertain manner—etc. the legislative intent. He then went on to say that the provisions of the Act manifest a Congressional intent that it is to be coterminous with the commerce of the nation and that it is to have a general application, which would include the Territory of Alaska; and that the Act was remedial and so should be generously construed. In concluding he says:

"In view of the fact that this Court is vested with the jurisdiction of a district court of the United States and my conclusion that it was the legislative intent that the act should have a general and uniform application, I am constrained to hold that the term 'district court of the United States,' as used in the act, comprehends this Court."

The Circuit Court of Appeals affirmed this decision, 9 Cir., 189 F.2d 177 as did the Supreme Court, on certiorari, in 1951, 342 U.S. 237, 72 S.Ct. 235, 237, 96 L.Ed. 275. In its opinion, the Supreme Court states:

"That court (District Court for the Territory of Alaska) has the jurisdiction of district courts of the United States by the law which created it. 48 U.S.C. § 101, 48 U.S.C.A. § 101. Yet vesting it with that jurisdiction does not necessarily make it a district court for all the varied functions of the Judicial Code. See Reynolds v. United States, 98 U.S. 145, 154, 25 L.Ed. 244; McAllister v. United States, 141 U.S. 174, 11 S.Ct. 949, 35 L.Ed. 693; United States v. Burroughs, 289 U.S. 159, 163, 53 S.Ct. 574, 576, 77 L.Ed. 1096; Mookini v. United States, 303 U.S. 201, 205, 58 S.Ct. 543, 545, 82 L.Ed. 748. The words 'district court of the United States' commonly

describe constitutional courts created under Article III of the Constitution, not the legislative courts which have long been the courts of the Territories. See Mookini v. United States * * *. But we think that in the context of this legislation they are used to describe courts which exercise the jurisdiction of district courts. * * *"

The Juneau Spruce case is, I think, the clearest touchstone for the case before us. There are similarities and dissimilarities between the two cases which might well be considered.

To both applies the analysis of the Supreme Court to the effect that though the District Court for Alaska has the jurisdiction of district courts of the United States, it is not necessarily a district court for all the varied functions of the Judicial Code. And, in both, the question for determination is whether, in the context of the particular legislation, the words "district court" are used to describe courts which exercise the jurisdiction of district courts, or whether they are meant to be confined to constitutional courts.

In reaching such a determination, the purpose, or policy of the particular statute is of paramount importance. In the Juneau Spruce case, the policy was the attainment of a uniform and all inclusive labor plan. As stated in Bates Manufacturing Company v. United States, 303 U.S. 567, 58 S.Ct. 694, 695, 82 L.Ed. 1020:

▪ "The purpose of giving the District Courts concurrent jurisdiction with the Court of Claims was to provide additional opportunity for the consideration and determination of claims that had 'long pressed upon the consideration of Congress' and to permit suit to 'be brought in the District where the parties reside.'".

### Conclusion

Since the purpose of Congress in passing the Tucker Act was to give all persons having claims for comparatively small amounts the right to bring suits in the districts where they and their witnesses reside without subjecting them to the expense and annoyance of litigating in Washington, it would seem that Congress intended that the District Court for Alaska should have jurisdiction to hear such claims. A contrary conclusion would force the plaintiff to suit in the Court of Claims and thus defeat the purpose of the Tucker Act.

On the other hand, the contextual setting of the words "district court", as used in the legislation in the two cases differs markedly. In the case before us, Congress consolidated the provisions of section 41 (20) 28 U.S.C., 1940 ed., conferring jurisdiction upon the district court in civil actions against the United States, with the first sentence of section 931(a), relating to jurisdiction of the district courts in tort claims cases. Provisions relating to the latter specify that the District Courts for the Territory of Alaska are to have jurisdiction, while the provisions relating to the former are entirely silent on the point. Because of this, plaintiff might urge that Congress, when it consolidated the two provisions in the 1948 revision must have intended a distinction; that a statute must be construed as a whole; and that the express inclusion in the tort claims section implied exclusion in the contracts act section.

Yet, when the Senate Judiciary Committee favorably reported the Judiciary and Judicial Procedure Act to the Senate, it recommended that the words in the tort claims act, "including the United States district courts for the Territories and possessions of the United States" be removed, and the words, "together with the District Court for the Territory of Alaska, the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands," be substituted therefor. This was done. It is noteworthy that, in explanation of this amendment, the Committee said:

"The amendment is necessary to conform the section, the language of which was taken directly from the Federal Tort Claims Act, to the style and nomenclature of the revision. In the revision, the

United States district courts in Hawaii and Puerto Rico are included in the term "district courts" as used throughout the bill. This results from the definition of "district court" contained in section 451.

The district courts for Hawaii and Puerto Rico therefore need not be specifically referred to. On the other hand in at least one of the possessions there are local district courts which are not intended to have tort-claims jurisdiction but which would be included by the general terms of the language the amendment strikes out. The specific inclusion of the courts of the three remaining Territories and possessions thus makes for clarity and precision." (United States Code Congressional Service, Title 28, 80th Congress, Second Session, page 1680).

On the basis of this explanation, it is reasonable to conclude that there was no reason for specifically including the Territory of Alaska in the Tucker Act as there was in the Tort Claims Act—that the only reason for specifically mentioning the Territory of Alaska in the Tort Claims Act was to circumvent the uncertainty of the former wording of the Tort Claims Act.

### Opinion

■ On the basis of all these considerations, of which the purpose of the statute in question is particularly persuasive, I am of the opinion and find that the words "district court", as employed in section 1346(a) of Title 28, U.S.C., were not intended to be confined to constitutional courts and those constituted by Chapter 5 of the Judiciary and Judicial Procedure Act; but that they were also meant to apply to courts which exercise the jurisdiction of such courts, including the District Court for the Territory of Alaska. Therefore, the motion to dismiss is denied.

### II. Facts and Arguments

Plaintiff's second ground for dismissal is that, regardless of whether this Court has jurisdiction to entertain original suits under the Tucker Act, that Act is not broad enough to permit recovery of demands upon counterclaims. As authority for this proposition, plaintiff relies upon United States v. Nipissing Mines Co., 206 F. 431, 434, a 1913 decision from the Second Circuit, and United States v. Double Bend Manufacturing Company, a recent decision from the Southern District of New York, 114 F. Supp. 750. The latter decision is based upon the former, which holds:

"The affirmative judgment against the United States upon the counter claim cannot, however, be permitted to stand. Section 951 of the Revised Statutes (U.S. Comp.St.1901, p. 695 [28 U.S.C.A. § 2406]) allows set-offs when claims have been presented to accounting officers, but this statute does not authorize a judgment for an excess against the government. * * * Moreover, in our opinion, the Tucker Act of 1887 which gives the District Courts jurisdiction over certain suits against the United States, is not broad enough to permit the recovery of demands upon counter claims. We think that that statute refers to original suits and prescribes procedure inconsistent with its use as the basis of a counter claim."

### Conclusion

An opposite result on this point, however, was reached in the case of United States v. Silverton, 200 F.2d 824, at page 827, a 1952 decision from the First Circuit, in which the court said:

"It is conceded by the government that the defendant in this case could have brought an original action in the court below against the United States for breach of contract, under the Tucker Act. If he had done so, of course the court below, under Rule 42, F.R.C.P., 28 U.S.C. could have consolidated such action with the pending action brought by the United States. It would be the emptiest technicality to hold that the same jurisdiction could not be invoked by way of counterclaim in the action already brought by the United States. So far as United States v. Nipissing Mines Co., 2 Cir., 1913, 206 F. 431, holds to the contrary, it is certainly out of harmony with the more liberal view as to the waiving of

governmental immunity expressed in United States v. Yellow Cab Co., 1951, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523, a case on which the court below quite justly relied as affording a persuasive analogy."

### Opinion

█ It is the opinion of this court that the Silverton case expresses the superior and more plausible view on this point, and I, therefore, find that this court has jurisdiction to entertain the counterclaim.