**UNITED STATES of America,**
Plaintiff,

v.

**Frank MARRONE, Defendant.**

**UNITED STATES of America,**
Plaintiff,

v.

**Truman EMBERG, Defendant.**
**Crim. Nos. 4031, 4033.**

District Court, Alaska,
Third Division, Anchorage.
April 9, 1959.

George N. Hayes, Asst. U. S. Atty., Anchorage, Alaska, for plaintiff.

Wendell P. Kay, Anchorage, Alaska, for defendant Marrone.

Seaborn J. Buckalew, Jr., Anchorage, Alaska, for defendant Emberg.

McCARREY, District Judge.

By order of the Court, these two cases have been consolidated for argument.

The defendants filed a motion for continuance " * * * upon the ground that this Court has no jurisdiction to try the offense with which he is charged, this court being a Territorial court abolished by the admission of Alaska to Statehood." The question to be determined by the Court is whether the defendants should be granted a continuance until the question of the jurisdiction of the District Court for the Territory of Alaska over state matters is determined by an appellate tribunal.

Both the defendants were indicted for crimes against the Territory of Alaska by the grand jury on November 7, 1958, prior to Alaska's admission into the Union. Their trials before the District Court for the Territory of Alaska were set for April 15 and April 13, 1959, respectively.

The defendants base their argument in support of their motions to continue upon their interpretation of Section 17, Article XV, of the Alaska Constitution, which reads as follows:

"Section 17. *Transfer of court jurisdiction.* Until the courts provided for in Article IV are organized, the courts, their jurisdiction, and the judicial system shall remain as constituted on the date of admission unless otherwise provided by law. When the state courts are organized, new actions shall be commenced and filed therein, and all causes, other than those under the jurisdiction of the United States, pending in the courts existing on the date of admission, shall be transferred to the proper state court as though commenced, filed, or lodged in those courts in the first instance, except as otherwise provided by law."

In this section, the State of Alaska accepted the then established judicial system of the Territory of Alaska, including the appellate court, the United States Court of Appeals for the Ninth Circuit, for the transitional period while the state court system was being established. Section 18 of Public Law 85–508, the Alaska Statehood Bill, 48 U.S.C.A. preceding section 23, was Congress's acceptance. This section continues the District Court for the Territory of Alaska and the Commissioners Courts for an interim period, but note that it does not specifically continue the appellate jurisdiction of the United

States Court of Appeals for the Ninth Circuit.

Counsel for the defendants further state that Sections 1291, 1292 and 1294 of Title 28 U.S.C.A. no longer confer appellate jurisdiction on the United States Court of Appeals for the Ninth Circuit from matters originating in the Alaska territorial courts as was the system before statehood, for the reason that the District Court for the Territory of Alaska is not a "district court of the United States," and all references to the District Court for the Territory of Alaska contained in the above sections of Title 28 U.S.C.A., were stricken on the admission of Alaska into the Union by the terms of Section 12 of the Alaska Statehood Bill, supra. Therefore, they conclude that Alaska's court system does not remain as constituted on the date of Alaska's admission to the Union, and thus Alaska was not granted what it bargained for in the way of a court system as provided in Section 17, Article XV, of its Constitution. The defendants claim that this lack of an appellate tribunal violates the Privileges and Immunities clause of the United States Constitution, Article 4, Section 2, because the citizens of all the other states in the Union enjoy the right of appeal in all state and federal matters. It is interesting to note that the United States Department of Justice takes a similar position in two Fairbanks cases. See Deere v. U. S. and Kosters v. U. S.

■■ I am of the opinion that there is a simple answer to this problem and that is that the United States Court of Appeals for the Ninth Circuit never lost its appellate jurisdiction over the present United States District Court in Alaska in either state or federal matters. Certainly Congress did not intend to leave Alaska without an appellate tribunal. No the thought makes reason stare. Thus, I find that Section 12 of the Alaska Statehood Bill, supra, does not go into effect until the President, by proclamation, terminates the present federal courts in Alaska. See United States v. Starling, D.C.Alaska, 171 F.Supp. 47.

I am of the opinion that even if Section 12 of the Alaska Statehood Bill, supra, was effective immediately upon the admission of Alaska into the Union, Sections 1291, 1292, and 1294 of Title 28 U.S.C.A., still provided for appeals from the present Alaska courts to the United States Court of Appeals for the Ninth Circuit.

The defendants contend that the removal by Section 12 of the Statehood Act of the references to appeal, to the United States Court of Appeals for the Ninth Circuit, of causes arising in the United States District Court for the Territory of Alaska, from Sections 1291, 1292, and 1294, supra, precludes appeals from this court because it is not a "district court of the United States." While not referred to at the hearing, I have never been moved or impressed with the theory relating to the jurisdiction of the territorial courts based on the "Magic Words" doctrine. They have " * * * become as sounding brass, or a tinkling cymbal."

Judge Dimond, a distinguished jurist of this court, relied on this doctrine in at least two cases to reach a decision. See Reese v. Fultz, 1951, 96 F.Supp. 449, 13 Alaska 227, and United States v. Bell, 1952, 108 F.Supp. 777, 14 Alaska 142. Judge Denman of the United States Court of Appeals for the Ninth Circuit also relied on this doctrine in his holding that the Norris-LaGuardia Act, 29 U.S. C.A. § 101 et seq., did not apply in the Hawaiian Federal Courts. In that case there was also strong legislative history to support his conclusion. See International Longshoreman's and Warehouseman's Union v. Wirtz, 9 Cir., 1948, 170 F.2d 183. The difference between the approach of Judge Dimond and this Court is that this Court presumes a federal statute referring to "District Courts of the United States" to include the District Court for the Territory of Alaska until it is shown by the preponderance of the evidence that this was not the intent of Congress. Judge Folta used this approach in regard to the "magic words," "district court of the United States,"

found in Section 303(b) of the Taft Hartley Act, 29 U.S.C.A. § 187(b). See Juneau Spruce Corp. v. International Longshoremen's Warehousemen's Union, 1949, 83 F.Supp. 224, 225, 226, 12 Alaska 260, 265:

"'The Board shall have power to petition any circuit court of appeals of the United States (including the United States Court of Appeals for the District of Columbia), or if all the circuit courts of appeals to which application may be made are in vacation, any district court of the United States (including the District Court of the United States for the District of Columbia), within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business * * *.'

"Under the construction urged by the defendants the Board would be deprived of any forum in which to enforce its orders, so far as the Territory of Alaska is concerned, if the Court of Appeals for the 9th Circuit were in vacation. And a similar result would follow if the Board should proceed under Section 10(j). But that is not all. Provision is made in Section 11(2) for the enforcement of the process of 'any district court of the United States or the United States courts of any Territory or possession, or the District Court of the United States for the District of Columbia'. But in Section 302(e), empowering the district courts of the United States and the United States courts of the territories and possessions to enjoin violations of the act, the District of Columbia is omitted, so that, literally construed, violations of the act may be enjoined everywhere, including the possessions, where it is clear under Section 2(6) that the act has no application whatever, except in the District of Columbia. It is thus apparent that, if defendants' view of the law is correct, the courts are empowered under Sections 11(2) and 302(e) to enforce their orders by subpoena and injunction in the possessions, where the substantive provisions of the act have no application, but not by injunction in the District of Columbia where obviously such provisions are in force and effect.

"It would seem, therefore, that if such consequences are to be avoided the statute must be given such a construction as will be reasonable and consistent with its provisions. That it was not the intent of Congress to limit jurisdiction to the constitutional courts seems reasonably clear, and indeed authority for this view is not wanting. Thus in United States v. Brotherhood of Locomotive Engineers, D.C., 79 F. Supp. 485, and United States v. International Union, United Mine Workers, D.C., 77 F.Supp. 563, injunctions were issued by Judge Goldsborough of the District Court of the United States for the District of Columbia under a provision of Section 208(a) granting such power to 'any district court of the United States'. Manifestly, if defendants' view is correct, that Court was without power to act in these cases. But the decision which in my opinion is decisive of this controversy is Federal Trade Commission v. Klesner, 274 U.S. 145, 47 S.Ct. 557, 71 L.Ed. 972, in which the term 'circuit court of appeals of the United States' in the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., was held, in an almost identical factual situation, to comprehend the Court of Appeals for the District of Columbia.

"Other considerations lend support to the construction urged by the plaintiff, not the least of which is that the very lack of uniformity and consistency in the use of the term 'district court of the United States' throughout the act itself shows not only the futility of con-

struing the term in a literal or restricted sense, but also that such could not have been the Congressional intent. It is undoubtedly the duty of the Court to ascertain the intent of Congress from the words used in the act, in the light of its aims, and to extend its operation to broader limits than its words appear to import if the Court is satisfied that their literal meaning would deny application of the act to cases which it was the intent of Congress to bring within its scope. The statute is remedial. It should be so construed as to prevent the mischief and advance the remedy.

"In view of the fact that this Court is vested with the jurisdiction of a district court of the United States and my conclusion that it was the legislative intent that the act should have a general and uniform application, I am constrained to hold that the term 'district court of the United States,' as used in the act, comprehends this Court. Accordingly, the demurrer should be overruled."

The presumption derived from the wording of the Taft Hartley Act is almost identical with that in Section 12 of the Alaska Statehood Bill, supra. Why should the Alaska Statehood Act be interpreted differently?

The United States Court of Appeals for the Ninth Circuit, speaking through Judge Bone, treated the "magic words" argument in the Juneau Spruce case, supra, in the same fashion as Judge Folta. See International Longshoremen's Union v. Juneau Spruce Corp., 1951, 189 F.2d 177, 184, 13 Alaska 291, 307, where Judge Bone held as follows:

"Regardless, however, of the status of Alaska 'local law' we cannot bring ourselves to believe that Congress framed the provisions of the Act so as to create a right of action under Section 303 but deliberately denied application of the important provisions of Section 301 in the event a cause of action was asserted in the Alaska court. The complexities (and the lack of any general rule of application) of 'local law' and common law principles in relation to suits against unincorporated associations such as labor unions presented one of the serious problems receiving attention and consideration at the hands of Congress, as is clearly indicated in committee reports. See Senate Report No. 105 (by Senator Taft) Legislative History of the Labor-Management Relations Act, Vol. 1, pp. 421, 422, 423. This contemplation of the law carries the conviction that Congress clearly intended the provisions of Section 301 to be applied by the 'district court for the Territory of Alaska' in actions based upon the provisions of the Act.

"It is certain that Congress adopted the Act with full knowledge that the only court in the entire Territory of Alaska which could possibly entertain and adjudicate a cause of action arising under the Act was the lower court—a federal court created by Congress and vested with the jurisdiction of district courts of the United States. It is noteworthy that in referring to the right to sue a labor organization 'as an entity', and to serve an 'officer or agent of a labor organization,' Section 301, subdivisions (b) and (d) provide for such procedures in a 'court of the United States'. Even if this court were not 'a district court of the United States', it is unquestionably, and under any test, a 'court of the United States.'

"No plausible or acceptable reason has been suggested to us as a basis for the conclusion that Congress intended to create the strange geographical hiatus in the law that acceptance of appellants' construction of the Act would produce. To adopt such a conclusion would require a construction of its terms so strict and narrow as to evince disregard of the dominating reasons as-

signed by Congress for its enactment. In short, it would mean that, for most purposes, the law was a dead letter in Alaska. Upon at least two occasions the Supreme Court refused to construe the literal language of statutes in a manner which would disregard and thereby frustrate the obvious purpose and policy of the legislation involved and produce unreasonable or absurd results. We adopt the rationale of the rule applied in these cases.

"The spirit, tenor and purport of the Act also convince us that Congress intended to bring *all* aspects of labor-management relations in Alaska which affect commerce within the ambit of the Act. We are persuaded that the lower court had jurisdiction to entertain and adjudicate the instant cause and to apply the provisions of Section 301. We further hold that Congress intended the language of Section 303 (which refers to district courts of the United States) to embrace and include 'the district court for the Territory of Alaska.' And in this connection we are generally in accord with the opinion expressed by the trial court on the subject of the jurisdiction of that court as related to the issues in this case."

It is noteworthy that Judge Bone thought that the District Court for the Territory of Alaska was even a "court of the United States."

When the Juneau Spruce case, supra, was appealed to the Supreme Court of the United States, Justice Douglas treated the "magic words" argument in the following manner:

"*First.* This suit was brought in the District Court for the Territory of Alaska. And the question which lies at the threshold of the case is whether that court is a 'district court of the United States' within the meaning of § 303(b) of the Act. That court has the jurisdiction of district courts of the United States by the law which created it. 48 U.S. C. § 101, 48 U.S.C.A. § 101. Yet vesting it with that jurisdiction does not necessarily make it a district court for all the varied functions of the Judicial Code. See Reynolds v. United States, 98 U.S. 145, 154, 25 L.Ed. 244; McAllister v. United States, 141 U.S. 174, 11 S.Ct. 949, 35 L.Ed. 693; United States v. Burroughs, 289 U ͡ 159, 163, 53 S.Ct. 574, 576, 77 L.Ed. 1096; Mookini v. United States, 303 U.S. 201, 205, 58 S.Ct. 543, 545, 82 L.Ed. 748. The words 'district court of the United States' commonly describe constitutional courts created under Article III of the Constitution, not the legislative courts which have long been the courts of the Territories. See Mookini v. United States, supra, 303 U.S. at page 205, 58 S.Ct. [at page] 545. But we think in the context of this legislation they are used to describe courts which exercise the jurisdiction of district courts. The jurisdiction conferred by § 303(b) is made 'subject to the limitations and provisions of § 301'. Section 301 lifts the limitations governing district courts as respects the amount in controversy and the citizenship of the parties; it defines the capacity of labor unions to sue or be sued; it restricts the enforceability of a money judgment against a labor union to its assets; and it specifies the jurisdiction of a district court over a union and defines the service of process. Congress was here concerned with reshaping labor-management legal relations; and it was taking precise steps to declared and announced objectives. One of those was the elimination of obstacles to suits in the federal courts. It revised the jurisdictional requirements for suits in the district courts, requirements as applicable to the trial court as to any court which in the technical sense is a district court of the United States. The Act extends in its full sweep to Alaska as well as to the states and the other

territories. The trial court is indeed the only court in Alaska to which recourse could be had. Even if it were not a 'district court' within the meaning of § 303(b), it plainly would be 'any other court' for purposes of that section. As such other court it might or might not have jurisdiction over this dispute depending on aspects of territorial law which we have not examined. But since Congress lifted the restrictive requirements which might preclude suit in courts having the district courts' jurisdiction, we think it is more consonant with the uniform, national policy of the Act to hold that those restrictions were lifted as respects all courts upon which the jurisdiction of a district court has been conferred. That reading of the Act does not, to be sure, take the words 'district court of the United States' in their historic, technical sense. But literalness is no sure touchstone of legislative purpose. The purpose here is more closely approximated, we believe, by giving the historic phrase a looser, more liberal meaning in the special context of this legislation."

See International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 1952, 342 U.S. 237, 240, 72 S.Ct. 235, 237, 96 L.Ed. 275, 13 Alaska 536.

Under the reasoning of the courts in the Juneau Spruce case, supra, and this Court's prior expressed beliefs on the subject of "district court of the United States," United States v. King, 1954, 119 F.Supp. 398, 401, 14 Alaska 500, I am of the opinion that the United States Court of Appeals for the Ninth Circuit has appellate jurisdiction over the United States District Court for the Territory of Alaska under the pertinent sections of Sections 1291, 1292, and 1294 of Title 28 U.S.C.A., which read as follows:

"§ 1291. Final decisions of the district courts

"The courts of appeals shall have jurisdiction of appeals from all final decisions of the *district courts of the United States,* * * *

"§ 1292. Interlocutory decisions

"(a) The courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States, * * *

"§ 1294. Circuits in which decisions reviewable

"Appeals from reviewable decisions of the district and territorial courts shall be taken to the courts of appeals as follows: (1) From a district court of the United States to the court of appeals for the circuit embracing the district; * * *."

Assuming, for purposes of argument, that the United States Court of Appeals for the Ninth Circuit does not have appellate jurisdiction over cases presently arising in the courts of Alaska, the defendants' problem of no appeal could only be solved by the Legislature of Alaska. By a stroke of its pen, Alaska could end the state jurisdiction of the present territorial courts. The reason the Alaska Legislature must solve this problem is because there is no constitutional right to appeal. See Tinkoff v. United States, 7 Cir., 1937, 86 F.2d 868; United States v. St. Clair, 8 Cir., 1930, 42 F.2d 26; Williams v. United States, 8 Cir., 1924, 1 F.2d 203.

Counsel for the defendants have relied principally upon the case of Coyle v. Secretary of State of Oklahoma, 221 U.S. 559, 31 S.Ct. 688, 55 L.Ed. 853, which can easily be distinguished on the facts. In that case the legislature of Oklahoma authorized the moving of the state capital from Guthrie to Oklahoma City contrary to a provision of the Oklahoma Statehood Bill. The United States Supreme Court said this action was within a state's power after it was admitted to the Union. Likewise it is the Alaska Legislature's prerogative to abolish the present territorial courts' jurisdiction over state matters any time it sees fit.

For the reasons stated, the motion for a continuance is denied.