**UNITED STATES of America, Plaintiff,**

v.

**Arthur David TALBOT, Defendant.
Cr. 3050.**

District Court, Alaska
Third Division, Anchorage.
June 23, 1955.

James M. Fitzgerald, Asst. U. S. Atty., Anchorage, Alaska, for plaintiff.

Stanley J. McCutcheon, of McCutcheon & Nesbett, Anchorage, Alaska, for defendant.

Peter J. Kalamarides, Anchorage, Alaska, for defendant.

Arthur D. Talbot, of Moody & Talbot, Anchorage, Alaska, for defendant.

McCARREY, District Judge.

This is a criminal contempt proceeding brought summarily under rule 42 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., based upon a motion and order to show cause, made by the U. S. District Attorney, why the defendant, Arthur David Talbot, should not be held in contempt of court for making a perjured statement while sworn as a witness in the trial of the case—United States v. Stringer, No. A–9150, D.C., 124 F.Supp. 705—then pending before the court.

A hearing was had on the order to show cause, and before this court had an opportunity to determine the issues raised, the defendant herein petitioned the U. S. Court of Appeals for the Ninth Circuit for a writ of prohibition. Upon the hearing of the petition for a writ of prohibition, said petition was denied. See Talbot v. McCarrey, 218 F.2d 565.

There is now pending before this court a motion to dismiss, based upon several grounds, all of which are hereafter more fully set forth. The motion to dismiss is hereby denied.

Defendant contends that this court—U. S. District Court for the District of Alaska—does not have " * * * the right, power or jurisdiction to entertain this proceeding in the first place, since neither the federal * * * nor the territorial statutes confer any such authority upon the court" (transcript of defendant's original brief, bottom of page 9 and top of page 10), for the reason that:

(a) The District Court for the District of Alaska is not a court of the United States, thus, the federal statute, 18 U.

S.C.A. §§ 401 and 402, which applies to contempt in a court of the United States does not apply, Mookini v. U. S., 303 U.S. 201, 204, 58 S.Ct. 543, 82 L.Ed. 748; United States v. Bell, D.C., 108 F.Supp. 777, 778.

(b) Assuming that the District Court of Alaska were a court of the United States, a perjury charge does not constitute grounds for contempt, In re Michael, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30; Clark v. U. S., 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993; Ex parte Hudgings, 249 U. S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656; Toledo Newspaper Co. v. U. S., 247 U.S. 402, 38 S.Ct. 560, 62 L.Ed. 1186; Marshall v. Gordon, 243 U.S. 521, 37 S.Ct. 448, 61 L.Ed. 881.

(c) This court, by reason of its not being a court of the United States, is controlled by the Alaska statute, and neither the federal nor the Alaska statute on contempts authorizes punishment of perjury or false swearing of a witness under the guise of a contempt proceeding; hence, to do so, would violate the constitutional right of a trial by jury for the defendant.

(d) Assuming that the defendant made a perjured statement while he was a witness in the trial of another case, the contempt provisions of the Alaska statute are not violated unless such perjured statement was an obstruction of justice.

(e) The statement made by the defendant, even if perjured, was not an obstruction of justice under the Alaska statutes and, therefore, does not constitute contempt, for the reason that " * * the false testimony must, in addition to constituting perjury, tend to *block* and *frustrate* and bring to naught the entire court proceedings (Ex parte Hudgings, supra)." (Tr. defendant's original brief, page 5.)

(f) Assuming that the statement made by the defendant was false and, thus, perjured, the defendant resumed the witness stand at his own request, prior to the conclusion of the trial, at which time he recanted, thus purging himself of such false statement; hence, an action for contempt could not lie.

(g) The defendant was not confronted by any of the witnesses who testified against him, contrary to his rights guaranteed him under the Constitution of the United States.

The defendant is a former assistant United States attorney and, while so employed, prepared information which was filed against one Herald E. Stringer, a practicing attorney in Alaska, charging him with unprofessional conduct, United States v. Stringer, D.C., 124 F.Supp. 705.

During the trial of the Stringer case, the defendant was called as a witness and was asked the following question, to which he gave the following answer:

Mr. Fitzgerald, Assistant U. S. Attorney,

"Question: Oh, one further question. Mr. Talbot, did you ever threaten to indict Mr. Buckalew unless he filed this information?

"Answer: Absolutely not." Tr. United States v. Stringer No. A-9150, page 202.

The defendant gave this testimony on the 17th day of June 1954 and thereafter, at his own request, see United States v. Stringer, Tr. 266 and top of 269, and upon stipulation of counsel on the 23rd day of June, while the trial of the Stringer case was still in progress, resumed the witness stand to correct the testimony set out on June 17th, as follows:

"Mr. Fitzgerald: No further questions, your Honor. Mr. Talbot, answer: There is a second point if you wish me to continue.

"The Court: Well, that is the purpose of your being on the witness stand. You may proceed. Answer: The second point which I wish to clarify is this: It is my recollection that when I testified last week I was asked whether or not I had ever threatened to indict Mr. Buckalew

if he did not file and sign the information in the Stringer case. I have not seen a transcript of my testimony, but my recollection is, 'absolutely not'. It is my recollection that the question was disconnected with other questions that were asked me and that it was not followed up. In any event, since I gave the answer, 'absolutely not', my memory has been partly refreshed on the point. For one thing, Mr. Buckalew has come to me and told me that he had a distinct recollection that I had, in fact, threatened him with indictment if this case were not filed. Mr. Groh has further refreshed my memory by telling me that he was present when I threatened Mr. Buckalew with indictment. In addition to that, Mr. Raymond Plummer has told me that he remembers, in an entirely different conversation than the one to which Mr. Groh referred, that Mr. Plummer got the impression that I was threatening Mr. Buckalew.

"Mr. Grigsby: Mr. William Plummer? Answer: Mr. Raymond Plummer. Now I have the highest regard for the absolute honesty of those three gentlemen, and when they tell me that they remember my saying such a thing, it gives rise to grave doubt in my mind as to whether or not I said it, but if I said it, I did not remember having said it when I gave my answer on the stand, but it may very well be that my memory is faulty on that point and it is something that bothers me a good deal. I believe that if Mr. Buckalew had thought that I had seriously threatened to indict him that he would have fired me on the spot and yet we remained fast friends.

"Mr. Fitzgerald: Your Honor, he is speculating as to what Mr. Buckalew would have done. I object to any further continuance. I want to ask him a question. Did you or did you not—

"The Court: Objection sustained because you want to explain other than to what you have testified to as to those two points. Answer: Very well.

"Mr. Fitzgerald, question: Did you or did you not threaten to indict Seaborn Buckalew if he failed to sign or file the Stringer information. Answer: To the best of my recollection, I did not, but—

"Question: That is enough. Answer: That is not enough, It is a distinct possibility that I did.

"Question: Now, Mr. Talbot, when you made your statement under oath during our last session where you absolutely did not. You were very definite about it, were you not? Answer: I was.

"Question: And you stated, 'absolutely not', is that correct? Answer: To the best of my recollection, those were my words.

"Question: Then you are now changing your testimony? Answer: I believe I am clarifying my testimony.

\*　\*　\*　\*　\*　\*

"Mr. Fitzgerald: Your Honor, I move the court find this witness in contempt for making a false statement in this court while he was under oath." See United States v. Stringer Tr. Page 277.

Thereafter, the defendant called Mr. Clifford Groh, see Tr. United States v. Stringer 297, and he was asked and answered the following, see Tr. 298:

"Question by Mr. Kay: Now, on an occasion, I can't tell you the date, Mr. Groh, early part of September 1953, do you recall an occasion when you were in the office of the United States Attorney who at that time was Seaborn J. Buckalew, Jr., at a time when Mr. Arthur D. Talbot was present? Answer: Yes, sir, Mr.

Buckalew and I were studying for the Alaska bar in the month of September 1953.

"Question: And do you recall an occasion when Mr. Talbot was present at which the question of proceedings against Herald Stringer was mentioned? Answer: Yes, I do, sir.

"Question: Would you tell the court in your own words, Mr. Groh, what Mr. Talbot said to you or to Mr. Buckalew and what you recall that he said to him? In other words, would you relate that conversation to the best of your recollection? Answer: To the best of my recollection Mr. Buckalew and I were studying for the bar in his office. Mr. Talbot came in. My recollection is that he was, I do not know which, antagonistic to us—I have an impression that he was either excited or nervous. At that time, my best recollection is that he advised Mr. Buckalew that if Mr. Buckalew either hesitated or stalled, or words to that effect, any longer in the Stringer case he, Mr. Talbot, would see that Mr. Buckalew would get indicted. He would either see that he got indicted or that he might get indicted. I do not remember the exact words, but that is the impression that I have and the reason that my impression of it is so vivid is because when he left the room I turned to Mr. Buckalew and I stated, 'That son-of-a-gun may indict you', and Mr. Buckalew and I had a conversation about it."

Mr. Seaborn J. Buckalew, Jr., was called on behalf of the defendant, see United States v. Stringer Tr. 300, at which time he testified as follows:

"Question by Mr. Kay: Mr. Buckalew, I will ask you if you recall an occasion early in the month of September 1953 in the office of the United States Attorney, Federal Building, Anchorage, Alaska, when you and Mr. Groh were studying for the bar examination when you had a visit from Mr. Arthur D. Talbot?

"Answer: I recall, yes.

"Question: Mr. Buckalew, did Mr. Talbot state to you on that occasion, at that place and at that time—make the following statement or words to this effect: 'If you don't quit dragging your feet or slowing up—or words to that effect—in the Stringer case I will see that you are indicted or I will get you indicted', or words to that effect. Did he make that statement?

"Answer: He did."

Thereafter, Mr. Raymond E. Plummer was called as a witness on behalf of the defendant, see United States v. Stringer Tr. 311, at which time he testified as follows (see Tr. 314):

"Question by Mr. Kay: Now, Mr. Plummer, let me ask you whether or not you recall having a conversation with Mr. Arthur D. Talbot, probably early or middle of September 1953 concerning the Stringer case? Answer: I was present at the same time Mr. Talbot was present when such a conversation took place, yes.

\* \* \* \* \* \*

"Question: Were there any persons present? Answer: Mr. William T. Plummer was present. I am not certain that Mr. Arnell was present at all times. It runs in my mind that we were, a major part of the time we were in the outer office and that Mr. Arnell was talking to some client in his inner office, but I know that he was there part of the time and Mr. Talbot was there, and it seems to me that some other attorney came by on his way to the bar luncheon and stepped in for a minute and then left.

"Question: Would you tell the court in your own words, sir, to the best of your recollection, what, if

anything, Mr. Talbot stated on that occasion and at that place concerning Mr. Buckalew? Answer: Well, we discussed the case in general—not discussed the grand jury and that it had caused more or less of an uproar. That there was considerable pressure being put on Mr. Buckalew in the United States Attorney's office to have the charge dropped and discussed the possibility of what was going to happen Monday. I forget what the discussion turned to. As I recall, Mr. Stringer was out of town at the—on that date and that Monday—they were discussing whether he had gone before the grand jury, whether his deposition would be taken—

"The Court: When you say 'he' who do you mean? Answer: Mr. Talbot, and I remember the concluding remark. At the conclusion somebody interposed the question, 'Well, what do you think will happen Monday?' To the best of my recollection, Mr. Talbot said, 'Well, if somebody gets to Buckalew and puts pressure on him over the weekend and the matter is taken from the grand jury or doesn't go through with the grand jury'—now, this next I can't recall the exact, what exactly he said—he said, 'That I will have an indictment returned against Buckalew', or he said, 'I will file an information against Stringer and probably file an information against Buckalew', one or the other.''

It is noteworthy that these three witnesses were all attorneys and admitted to the practice of law in the Territory of Alaska at the time they so testified.

Now, to consider the contentions of the defendant: Title 48 U.S.C.A. § 101, created the District Court for the District of Alaska and gives said court general jurisdiction in civil, criminal, equitable and admiralty causes. I construe the argument on behalf of the respondent to question the power of the court to punish persons or conduct an action of contempt as distinguished from jurisdiction.

Under rule 42 of the Federal Rules of Criminal Procedure, the procedure was established whereby this court could punish criminal contempt. It has been ably argued that this court does not have the power to punish under section 401, title 18 U.S.C.A., for the reason that this court is not a constitutional court of the United States, but is, in fact, a legislative court. However, recognizing this fact, I am of the opinion that the District Court for the District of Alaska comes within the purview of section 401, and has the power to punish for contempt as provided therein. The legislature, in establishing a procedure for punishing criminal contempt, is presumed to have had such a purpose in mind. By the Judicature Act of 1789, 1 Stat. 83, the powers of the courts to punish for contempt, established at common law, were codified. By the act of 1831, 4 Stat. 487, as well as subsequent acts, Congress has acted under an intention not to give the courts a free hand in criminal contempt, but to restrict them to the particular instances enumerated in section 401. It is inconceivable that Congress could have intended that the legislative courts should be unrestricted in the treatment of these matters. I therefore find that the District Court for the District of Alaska is within the purview of section 401 of title 18 U.S.C.A., wherein it refers to "* * * court of the United States", and in so finding, I concur with the late Honorable George W. Folta in his finding in the case, Territory of Alaska v. American Can Co., Inc., D.C., 117 F. Supp. 819, 820, wherein he stated:

"With all due deference to the decision of Judge Dimond referred to (United States v. Bell, D.C., 108 F. Supp. 777, holding to the contrary under title 18 U.S.C.A. 1503) I am unwilling to contribute to the further hybridization of the court and, hence, decline to follow it." Cf.

United States v. King, D.C., 119 F. Supp. 398; Juneau Spruce Corp. v. International Longshoremen's & W. U., D.C., 83 F.Supp. 224, affirmed 9 Cir., 189 F.2d 177, affirmed 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275.

Even if section 401 was held not to apply to the District Court of Alaska, I find that this court has inherent power to punish for contempt which obstructs its administration of justice. As a matter of fact, were it not for section 401, then the court would have the powers of a common law court, which has been held to be inherent in all courts to punish as to contempt which obstructs its administration of justice.

For holdings concerning the inherent power of courts to protect and preserve its proceedings from interference, see Ex parte Robinson, 19 Wall. 505, 510, 86 U.S. 505, 510, 22 L.Ed. 205; In re Debs, 158 U.S. 564, 595, 15 S.Ct. 900, 39 L.Ed. 1092; Michaelson v. U. S., 266 U.S. 42, 65, 45 S.Ct. 18, 69 L.Ed. 162; Morgan v. U. S., 8 Cir., 95 F.2d 830, quoting Ex Parte Robinson.

Now, to consider recantation. It has been argued for the defendant that since the defendant took the witness stand before the conclusion of the trial and recanted, the white wings of purity and serenity had again been restored to their roguish owner thus redeeming himself, and setting aside all taint and color that may, at one time, have attached to the witness by reason of the false testimony. In fact, during the argument, counsel for the defendant urged that the defendant had thus purged himself, and vigorously argued that it was the weight of the law to encourage the correction of erroneous and even intentional false statements of a witness (Tr. of argument, Page 35, 39). Counsel for the respondent cited to this court as authority for his representation, the cases of People v. Gillette, 1908, 126 App.Div. 665, 111 N.Y.S. 133, and People v. Brill, 1917, 100 Misc. 92, 165 N.Y.S. 65, and would have this court accept these cases as leading authority

on the question (Tr. 35 and 39). It is interesting to note that these same two cases were cited and referred to by counsel for the respondent in the case of United States v. Norris, before the Supreme Court of the United States, reported at 300 U.S. 564, at page 566, 57 S.Ct. 535, 81 L.Ed. 808. The Court, in the Norris case, referred to the Gillette case, but refused to accept the rule therein, and pointed to the later case from the same jurisdiction as that of the Gillette case, in which a lower court also refused to follow the Gillette case, People v. Markan, 123 Misc. 689, 206 N.Y.S. 197. With this reasoning, I whole-heartedly concur. The Norris case is directly in point here, and can correctly be termed a leading case before this court. In the Norris case, a Senate subcommittee called before it George W. Norris, to whom questions were directed concerning campaign activities. A portion of the questions being set out in the report were as follows:

"Q. Now what assurance did you have of financial support and backing?' A. None whatever.

"Q. In your campaign? A. None whatever. * * *

"Q. Did you get any assurance from anybody that they would help you—Republican, Democrat, independents, or anybody say they would help to finance your campaign? A. No, sir. * * *

"Q. Did you receive any money from anybody in the campaign? A. I did not."

This testimony in the Norris case is a great deal like that here in question, in that the answers were clear-cut and unequivocal. In the Norris case, the Supreme Court had this to say after having heard argument for Norris which cited the two cases cited by counsel for respondent herein, beginning at page 573 and following on page 574 of 300 U.S., on page 538 of 57 S.Ct.:

"We come to the substantial question which moved us to grant the writ of certiorari. We hold the Dis-

trict Judge was right in refusing to charge as requested by the respondent and the judgment should not have been reversed on account of his failure so to do. The respondent admitted he gave intentionally false testimony on September 22d. His recantation on the following day cannot alter this fact. He would have us hold that so long as the cause or proceeding in which false testimony is given is not closed there remains a *locus poenitentiae* of which he was entitled to and did avail himself. The implications and results of such a doctrine prove its unsoundness. Perjury is an obstruction of justice; its perpetration well may affect the dearest concerns of the parties before a tribunal. Deliberate material falsification under oath constitutes the crime of perjury and the crime is complete when a witness' statement has once been made. It is argued that to allow retraction of perjured testimony promotes the discovery of the truth and, if made before the proceeding is concluded, can do no harm to the parties. *The argument overlooks the tendency of such a view to encourage false swearing in the belief that if the falsity be not discovered before the end of the hearing it will have its intended effect, but, if discovered, the witness may purge himself of crime by resuming his role as witness and substituting the truth for his previous falsehood. It ignores the fact that the oath administered to the witness calls on him freely to disclose the truth in the first instance and not to put the court and the parties to the disadvantage, hindrance, and delay of ultimately extracting the truth by cross-examination, by extraneous investigation, or other collateral means."* (Emphasis supplied.)

Thus, it appears, without question, that the contention of the respondent herein must fall before the decision of the Supreme Court, and by the weight of sound reasoning.

Counsel for the defendant have argued that the defendant was denied his rights guaranteed him by the Sixth Amendment to the U. S. Constitution, i. e., confrontation by witnesses. This argument cannot stand in light of the proceedings, appearing at page 82, and following, of the transcript, wherein the court informed the defendant that it would direct the government to call Mr. Buckalew, Mr. Groh and Mr. Ray Plummer, at which time the defendant could cross-examine, and that the witness would be that of the government and not of the defendant. The defendant did not avail himself of this opportunity. Further, the defendant was fully aware of who these witnesses were, and of what they would give by way of testimony, in that the defendant testified in the Stringer case that they had come to him and informed him of their recollection of his conversation with them and in their presence. Tr. 277, United States v. Stringer.

Now, to consider the Alaska statute on the subject of contempt: The applicable provisions of the Alaska statute are as follows:

"Contempts defined. The following acts or omissions, in respect to a court of justice or proceedings therein are deemed to be contempts of the authority of the court: * * * Fourth. Deceit or abuse of the process or proceedings of the court by a party to an action or special proceeding. Fifth. Disobedience of any lawful judgment, order, or process of the court. * * * Ninth. Any other unlawful interference with the process or proceedings of the court." See 57–6–1, 1949 Compiled Laws.

Annotated of the Territory of Alaska.

Section 401, title 18 U.S.C.A. defines the conditions which may be punished as contempt, under that section, as that

which obstructs the administration of justice.

The United States Supreme Court has stated—Mr. Chief Justice White speaking for the court—that "An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest." Ex parte Hudgings, 249 U.S. 378, 39 S.Ct. 337, 339, 63 L.Ed. 656. In a more recent case, this same court, through Mr. Justice Black, stated, quoting from the Hudgings case: " 'The presence of that element (obstruction) must clearly be shown in every case when the power to punish for contempt is exerted' ". In re Michael, 326 U.S. 224, 228, 66 S.Ct. 78, 80, 90 L.Ed. 30.

Next, we should turn to a discussion of the word "perjury" and see what the authorities hold when perjury constitutes the contempt to be punished.

Section 1621 of title 18 U.S.C.A. describes perjury as the act of one who, contrary to an oath to testify truthfully, testifies falsely on any material matter.

Title 65, chapter 7, section 1, A.C.L.A. 1949, defines perjury as the act of one who takes an oath to testify truthfully, but who testifies falsely in regard to any matter for which an oath is required. Alaska adopted the Oregon code, and this statute appears in the laws of Oregon, volume 3, § 23–601, O.C.L.A., 1940 ed. The Supreme Court of Oregon has construed the statute to require the testimony to be on a material matter, In re Moynihan, 111 P.2d 96, citing earlier cases. Volume 70 C.J.S., Perjury, § 1, p. 457—sets forth the common law definition of perjury, stating the requirement to be that the testimony so given must be on a material matter.

■ Thus, it appears that, in order to be perjury, the matter which is falsely given must be material to the matter before the court, and to be contempt there must be the element of obstruction of the court in the administration of justice.

The defendant argues that perjury cannot be punished under the guise of a contempt proceeding (defendant's original brief, page 10) and with this, I agree. However, the defendant mistakenly has overlooked the fact that this proceeding, under the order to show cause, is not one for perjury, but for contempt, for the reason that perjury was alleged to have been committed; hence, further consideration of this contention is not justified or warranted.

Although the defendant was an officer of the court at the time he testified, he appeared before the court at that time in the role of a witness, cloaked with the duties, obligations and privileges of a witness. The court, as well as the profession, has good grounds and reasons to believe, and to expect, that an attorney, when acting in the role of a witness, would conduct himself in the manner commensurate with his profession and learning.

■ I find that the statements made by the defendant, supra, were false. I further find that these false statements, although most reprehensible and degrading as they are when made by this witness and an officer of the court, though in the capacity of a witness at the time, supra, were not material to the matter in issue and, thus, were not perjured and, in addition, these false statements were not an obstruction of justice; hence, I find that the defendant was not in contempt of court.