UNITED STATES of America, Appellee,

v.

George A. BERGMAN, Jr., Appellant.

No. 167, Docket 29875.

United States Court of Appeals Second Circuit.

Argued Nov. 18, 1965.

Decided Jan. 19, 1966.

Charles J. Fanning, Pierre N. Leval, John E. Sprizzo, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for appellee.

Arthur H. Christy, Carl F. Trunk, Jr., Christy, Bauman & Christy, New York City, for appellant.

Before MEDINA, WATERMAN and SMITH, Circuit Judges.

SMITH, Circuit Judge:

George A. Bergman, Jr., sentenced to concurrent one-year terms upon conviction on six counts of a seven-count indictment charging perjury in violation of 18 U.S.C. 1621, after trial to the jury in the United States District Court for the Southern District of New York, Charles M. Metzner, District Judge, appeals. We find no reversible error and affirm the judgment.

Bergman, the Post Office Transportation Manager for New York State from 1952 to 1961, when he was promoted to Deputy Regional Director for the New York Region, serving until his resignation in April 1962, was called to testify in September and November 1963 before Grand Juries in the United States District Court for the Southern District of New York. The Grand Juries were then investigating allegations of bribery,

graft and other corruption involving postal employees and mail contractors in the New York region.

The Grand Jury testimony of Bergman which the jury found false and perjurious was in summary: Count 1: Denying the receipts of kickbacks and asserting that his income during 1959–1962 was derived solely from Post Office employment; Count 2: Denying that one Molloy interceded for one Doran with regard to Post Office contracts and denying any but the most casual relations with Molloy; Count 4: Asserting that he had paid off a loan to the Atlantic Bank of New York out of his salary; Count 5: Denying again the receipt of any other income except Post Office salary in 1960; Count 6: Denying ever having received, directly or indirectly from Doran "any money or thing of value"; Count 7: Denying that he received $2,000 from one Frankel.

█ Since the sentences on each count were identical and concurrent the court need not consider other counts so long as appellant was properly convicted on one. Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); United States v. Benjamin, 2 Cir., 1964, 328 F.2d 854, cert. denied 377 U.S. 953, 84 S.Ct. 1631, 12 L.Ed.2d 497; United States v. Mont, 2 Cir., 306 F.2d 412, cert. denied 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed. 2d 272, (1962).

Appellant contends that there is insufficient evidence of any kickbacks or things of value paid to him. Count 1, in the first of two specifications, charges perjury in the answer to the question, "Q. So to sum it up, then, you have at no time ever accepted any kickbacks of any kind? A. No, sir." The evidence on this point is that Molloy and his wife received over $11,000 from Doran. Molloy testified that he spent this, or part of it, as agreed by Doran, Bergman, and himself, to promote appellant's candidacy for the post of Regional Director. When Molloy asked about payment for expenses, appellant turned to Doran, and Doran paid.

█ The kickback need not be paid directly to appellant. Here it was applied for his benefit and at his request. And there was evidence from which the jury could have concluded that Bergman knew this was a kickback when he denied accepting any. Appellant also suggests that he was not involved in the January, 1961 strike contract between Doran and the Post Office, which greatly benefited Doran, and which allegedly supplied the "source of income or gain" out of which the kickback came. But even if the contract were fair and reasonable, and negotiated by others than Bergman, there still could be a kickback. And the jury certainly could believe that Bergman did approve the total contract price; the fact that his subordinate would have approved it anyway does not make any difference.

Appellant also claims that there was insufficient evidence on Count 6. Bergman denied receiving anything back from Doran, his company, or indirectly from any company. And when asked, "Q. I'd like to make it as broad as I possibly can, so there's no misunderstanding. The Grand Jury wants to know whether you had any money or thing of value given to you or on your behalf from anybody connected with Doran in any way at any time," Bergman replied, "No." The Molloy transaction was again the proof offered. Since the question refers to "someone on your behalf" there is not even a problem relating to the payments to Bergman; they were for his benefit and on his behalf.

Appellant argues there was a failure of proof concerning whether he committed perjury when he denied having outside sources of income from 1959 to 1962 (Count 1, second specification) and in 1960 (Count 5). The government relied on extrajudicial admissions by appellant, on separate occasions to each of two postal inspectors, that he had non-salary income and therefore could not stand an examination of his affairs; and on the appearance of $37,900 from October 1960 to February 1961, in appellant's possession, despite indications of insolvency before this.

Appellant's position is that proof of falsity in this perjury case is within the rule of Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945) and Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118 (1926), see United States v. Marchisio, 344 F.2d 653, 664–665 (2 Cir. 1965), requiring two witnesses or one witness plus corroborating circumstances. The government relies on United States v. Collins, 272 F.2d 650 (2 Cir. 1959), cert. den., 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619 (1960), which permits proof based upon circumstantial evidence of a highly reliable order. The evidence in *Collins* was expert testimony that a document was typed with a machine not available until 1956. Defendant had said that the document so typed was signed in 1953. Thus there was in *Collins* proof of a fact absolutely inconsistent with defendant's prior statement. This proof was of a higher order than direct oral testimony of the falsity of the statement; it would be more reliable, for instance, than oral testimony that the defendant was seen signing the document in 1953. And see United States v. Wood, 14 Pet. 430, 10 L.Ed. 527 (1840), where proof was by documentary evidence, also a higher level of proof than oral testimony, and the court held that the two-witness rule was inapplicable.

■■ Thus proof of falsity by real evidence is not within the two-witness rule. Furthermore, where falsity can *only* be shown by circumstantial evidence, this if of substantial weight, may suffice. In United States v. Nicoletti, 310 F.2d 359 (7 Cir. 1962), defendant had sworn that he did not recall an interview. To prove falsity, that he did recall, could not be done, absent an admission, by other than circumstantial evidence. Such evidence was held sufficient.

■ Proof of the falsity of appellant's statement that he had no other sources of income does not involve proof by one witness only. The proof here, the admissions and the circumstantial evidence, is therefore sufficient independently of the above rules. Furthermore there are two witnesses testifying to admissions; these

are separate admissions, but of the same facts.

■ Count 7 was proved with certainty. Bergman testified that the money for a $2,000 loan did not come from one Frankel. The evidence showed that Frankel was approached by Bergman for a loan, and that he refused, but said that he would get the money for him. Frankel exchanged checks with Lambros, who did not know Bergman, and Frankel gave Bergman Lambros' check as a loan. There was no evidence that Bergman knew Frankel really was the source of the money. But the jury could conclude that Bergman knew that the money came from Frankel since Frankel did get the money for him, and since it would have been very unlikely that Lambros, a stranger, would lend money to Bergman, and therefore that Frankel was in reality the source of the money in the sense of one who guaranteed the loan.

Appellant argues that he was not protected by the ruling of the court striking evidence of other kickbacks, and instructing the jury to disregard, because of the inherently prejudicial nature of the testimony struck, under the rule of Throckmorton v. Holt, 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663 (1901). Actually, since some of this evidence was retained to prove other counts, appellant is also claiming that the jury cumulated evidence from one count to the others.

The only items that were truly struck were testimony that Frankel delivered two cruise "passes" (in reality tickets) to Bergman and testimony of payment by Doran to a corporation one-half owned by Bergman (Northeast Trading Corp.) of $20,000 for a house, and forfeit of the $20,000 by Doran without taking the house.

The other items, four in number, were the endorsement by Frankel of a bank loan to Bergman, the interest-free loan to Bergman (Lambros transaction), and evidence of cash held by Bergman, $22,-900 in 1960, and $15,000 in 1961. The Lambros transaction was the subject of Count 7. The evidence of cash was

relevant to the question of non-salary income (Count 1, second specification; Count 5). The endorsement was used to show Bergman's financial difficulties in order to prove that sudden appearances of cash would be income, rather than the proceeds of assets sold.

■■ On the question of failure to declare a mistrial because of the two items entirely stricken, the $20,000 item, if improperly admitted, without sufficient limiting instructions, might have been prejudicial. However, limiting instructions were given. Moreover, this item was admissible on Counts 1 and 6 as relevant to the kickback issue and the issue of receipt of anything of value from Doran. The theory on which the court struck his testimony was that there was no legal obligation on the part of Northeast to return the money to Doran after he said that he no longer was interested in the house, because it was a down-payment. Total price to Doran was to be $32,000. Petito, Bergman's associate in Northeast, testified that he told Doran he would need $20,000 as a deposit to buy the house for Northeast which would resell to Doran. It is unclear what Northeast was to pay; perhaps $20,000 was all. However, the jury could have been permitted to infer that Doran's failure to take steps to acquire the house was a kickback to Bergman. Accordingly the item need not have been stricken and the failure to direct a new trial is not grounds for reversal. The admissibility of the cruise "passes" from Frankel may have been a somewhat closer question, but in any case the limiting instructions were sufficient. There is no ground for reversal here.

■■ Finally, appellant argues that the comment by the prosecutor in his summation concerning the non-availability of Doran for testimony requires reversal. No mistrial is required where the matter is not highly prejudicial and the instructions by the court are adequate. This is the case here. Here there was no immediate objection to the comment. See United States v. Lombardozzi, 335 F.2d 414 (2 Cir.), cert. denied 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964). In fact, appellant's counsel was satisfied that the court would correct by charging as it did. The court charged that Doran was equally unavailable to both sides, that no inferences should be made concerning his failure to testify, and any testimony he might have made, and that "[i]n short, you should utterly disregard his possible testimony as a factor in this case." This was sufficient.

We find it unnecessary to discuss the alleged errors as to the other counts. The judgment is affirmed.