Dean Anthony **BECKLEY**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 887.

Supreme Court of Alaska.

July 10, 1968.

James R. Clouse, Jr., Anchorage, for appellant.

Robert N. Opland, Dist. Atty., Robert K. Yandell, Acting Dist. Atty., Leroy J. Barker, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, Chief Justice, DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

A jury found appellant guilty of two counts of perjury and of being an accessory after the fact to the felony of murder in the first degree. This appeal followed.

Appellant had testified as a witness for the defense at the trial of George Fajeriak who was convicted of first degree murder. At appellant's trial his testimony in the Fajeriak trial was introduced in evidence by the prosecution. Appellant claims that such testimony was inadmissible because prior to testifying at the Fajeriak trial he was not given the *Miranda* warning, that is, he was not warned that he had the right to remain silent, that any statement he did make could be used as evidence against him, and that he had the right to an attorney, either retained or appointed.[1]

The *Miranda* warning is a procedural safeguard to secure the constitutional privilege against self-incrimination.[2] Unless such safeguard is used, the prosecution may not use at the trial of an accused any statements that he has made, whether inculpatory or exculpatory, which stem from custodial interrogation of the accused. By "custodial interrogation" is meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[3] The reason for this requirement is that

> [W]ithout proper safeguards the process of in-custody interrogation of persons

suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.[4]

The *Miranda* rule has no application here. Appellant was not being subjected to custodial police interrogation as one suspected or accused of a crime. The proceedings in court at the Fajeriak trial while appellant was testifying as a witness did not constitute an investigation into an unsolved crime which had begun to focus on appellant as the prime suspect.[5] Since appellant was not then in custody and was not being interrogated as one suspected or accused of crime, there were not present here those "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely."[6]

Apart from *Miranda* there was a question as to whether appellant ought to have been advised of his privilege against self-incrimination prior to testifying. Ordinarily a witness is required to assert the privilege and it is deemed waived unless invoked.[7] The courts have held, however, that a witness must be warned of his privi-

1. Miranda v. State of Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694, 706–707, 10 A.L.R.3d 974, reh. denied, California v. Stewart, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966).

2. The constitutional privilege against self-incrimination is conferred by the fifth amendment to the federal Constitution in providing that no person shall "be compelled in any criminal case to be a witness against himself."

3. Note 1 supra, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

4. Note 1 supra, 384 U.S. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719.

5. Escobedo v. State of Illinois, 378 U.S. 478, 490–491, 84 S.Ct. 1758, 12 L.Ed. 2d 977, 986 (1964).

6. Miranda v. State of Arizona, 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694, 719, 10 A.L.R.3d 974, reh. denied, California v. Stewart, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966).

7. Rogers v. United States, 340 U.S. 367, 370–371, 71 S.Ct. 438, 95 L.Ed. 344, 347–348, 19 A.L.R.2d 378, reh. denied, 341 U.S. 912, 71 S.Ct. 619, 95 L.Ed. 1348 (1951); United States v. DiMichele, 375 F.2d 959, 960 (3rd Cir.), cert. denied, 389 U.S. 838, 88 S.Ct. 54, 19 L.Ed.2d 100 (1967); United States v. Parker, 244

lege against self-incrimination where he is not a mere witness but is one who has been indicted or against whom a criminal information or complaint has been filed, or if it clearly appears at the time he gives his testimony that the witness is marked for prosecution or is the target of a prospective criminal action.[8]

We do not have here a situation which would require that the warning of the privilege against self-incrimination be given. Although appellant was indicted just nine days following his testimony at the Fajeriak trial, the record does not indicate that at the time appellant testified he was "marked for prosecution, or that the prosecution was aimed at him or that he was * * * in any sense accused of the crime subsequently charged against him."[9] Even if it could be said that there existed at that time the possibility that appellant might be indicted later, this would not be enough to require that appellant be advised of his rights under the fifth amendment.[10] The failure to advise appellant of such rights prior to his giving testimony at the Fajeriak trial did not make that testimony inadmissible at appellant's trial.

The two perjury indictments stated that the matters in respect to which appellant had perjured himself were material to the criminal trial of George Fajeriak. At the close of the state's case appellant moved for a judgment of acquittal as to these indictments on the ground, among others, that the state had failed to show the materiality of the alleged perjurous statements. The trial judge, in denying the motion for acquittal, held that materiality of the statements was not required to be shown, and he struck from the indictment as surplusage the allegations as to materiality. Appellant claimed this was error.

At common law in order to constitute perjury the false testimony must relate to a material point tending to prove a fact bearing on the issues before the court.[11] The common law has been modified by statute in Alaska. AS 11.30.010(a) provides:

A person authorized by law to take an oath or affirmation, or a person whose oath or affirmation is required by law, who willfully and falsely swears or affirms in regard to a matter concerning which an oath or affirmation is authorized or required, is guilty of perjury.

The statute is unambiguous. It clearly indicates the intent of a legislative body to enlarge the scope of the crime of perjury as it existed at common law so as to make it a crime for one to willfully and falsely swear in regard to any matter in respect to which an oath is authorized or required, regardless of the question of materiality of such matter to an issue before the court.[12]

Appellant contends that the Alaska perjury statute, originating from an Act of Congress in 1899 establishing penal and

---

F.2d 943, 946 (7th Cir.), cert. denied, 355 U.S. 836, 78 S.Ct. 61, 2 L.Ed.2d 48 (1957); United States v. Lawn, 115 F. Supp. 674, 677 (S.D.N.Y.), appeal dismissed, United States v. Roth, 208 F.2d 467 (2d Cir. 1953).

8. United States v. Luxenberg, 374 F.2d 241, 246 (6th Cir. 1967); United States v. Scully, 225 F.2d 113, 116–119 (2d Cir.) (concurring opinion of Judge Frank), cert. denied, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955); United States v. Lawn, 115 F.Supp. 674, 677 (S.D.N.Y.), appeal dismissed, United States v. Roth, 208 F.2d 467 (2d Cir. 1953).

9. United States v. Scully, 225 F.2d 113, 114 (2d Cir.), cert. denied, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955).

10. United States v. Parker, 244 F.2d 943, 946 (7th Cir.), cert. denied, 355 U.S. 836, 78 S.Ct. 61, 2 L.Ed.2d 48 (1957); United States v. Scully, supra, 225 F.2d 119 n. 9.

11. State v. Byrd, 28 S.C. 18, 4 S.E. 793, 795 (1888); 3 R. Anderson, Wharton's Criminal Law & Procedure § 1309 at 673 (10th ed. 1957).

12. State v. Miller, 26 R.I. 282, 58 A. 882, 883 (1904); State v. Byrd, 28 S.C. 18, 4 S.E. 793, 795 (1888).

criminal laws for the District of Alaska [13], adopted the common law elements of perjury which included the elements of materiality although not specifically spelled out in the statute. We disagree. Materiality is not mentioned in the Alaska perjury statute; therefore it is unnecessary, in order to prove the crime of perjury, to establish that the matter concerning which willfully false testimony under oath was given was material to an issue before the court.[14] The crime is complete if one shall willfully swear falsely in regard to any matter respecting which an oath is authorized or required.

Our dissenting colleague, Justice Rabinowitz, believes that the rule of statutory construction we adopted in City of Fairbanks v. Schaible [15] binds us to adopt the Oregon Supreme Court's construction of the Oregon perjury statute, which was that materiality was an essential element of the offense of perjury. Assuming that the 1899 Congressional act dealing with perjury was taken from the laws of Oregon [16], we do not feel bound by *Schaible* to adopt the Oregon court's holding. The presumption in *Schaible* that a statute adopted from Oregon was adopted with the interpretation placed upon it by the Oregon Supreme Court prior to adoption will not apply where, as here, the statute being considered is clear and unambiguous and the Oregon court's interpretation of the statute, without support of any reasoning, is obviously contrary to the express wording of the statute. The Oregon statute did not require materiality as an essential element in the crime of perjury. We believe that the Oregon decisions holding, without reasons, that materiality was es-

13. Act of March 3, 1899, ch. 429, 30 Stat. 1253, 1266 provided in Sec. 90:
   That if any person authorized by law to take an oath or affirmation, or of whom an oath or affirmation shall be required by such law, shall willfully swear or affirm falsely in regard to any matter or thing concerning which any oath or affirmation is authorized or required, such person shall be deemed guilty of perjury; and if any person shall procure another to commit the crime of perjury, such person shall be deemed guilty of subornation of perjury.

14. We respectfully disagree with the Territorial district court's holding in United States v. Talbot, 133 F.Supp. 120, 128, 15 Alaska 590, 607 (D. Alaska 1955) that in order for there to be perjury the matter which is falsely given must be material to the matter before the court.

15. 375 P.2d 201, 207 (Alaska 1962).

16. The essential difference between the Congressional Act and the Oregon statute is shown by the italicized words in the two laws, as follows:
   *Congressional Act* (Act of March 3, 1899, ch. 429, 30 Stat. 1266, § 90)
   That if any person authorized by law to take an oath or affirmation, or of whom an oath or affirmation shall be required by such law, shall willfully swear or affirm falsely in regard to any matter or thing concerning which *any* oath or affirmation is authorized or required, such person shall be deemed guilty of perjury; and if any person shall procure another to commit the crime of perjury, such person shall be deemed guilty of subornation of perjury.
   *Oregon Statute* [Law of October 19, 1864, § 598; Hill's Annot. Laws of Oregon § 1825 (1892)]
   If any person authorized by any law of this state to take an oath or affirmation, or of whom an oath or affirmation shall be required by such law, shall willfully swear or affirm falsely in regard to any matter or thing concerning which *such* oath or affirmation is authorized or required, such person shall be deemed guilty of perjury, and if any person shall procure another to commit the crime of perjury, such person shall be deemed guilty of subornation of perjury.
   It is interesting to note that the Rhode Island perjury statute, which was construed in State v. Miller, 26 R.I. 282, 58 A. 882, 883 (1904) as not requiring materiality as an element of the offense, is strikingly similar to the Congressional and Oregon statutes. The Rhode Island statute provided:
   Every person of whom an oath or affirmation is or shall be required by law, who shall willfully swear or affirm falsely in regard to any matter or thing respecting which such oath or affirmation is or shall be required shall be deemed guilty of perjury.

sential [17] were incorrect. When this is the case we cannot feel justified in blindly adopting the Oregon decisions because of the presumption we referred to in *Schaible*. The presumption disappears in such a situation and we are then free to construe our statute according to our own concept of what reason and justice require.

■ Since materiality is not an essential element of the offense, it was proper for the trial court under Crim.R. 7(e) [18] to amend the indictments by striking as surplusage the allegations that the matters respecting which appellant perjured himself were material to the criminal trial of George Fajeriak. It is an "error in form" in an indictment, in the meaning of Crim.R. 7(e), to state as an element of an offense that which is not an essential element of the offense. By striking the allegation as to materiality no "additional or different offense" was charged. And appellant's "substantial rights" were not prejudiced, because he had no right to have included in the statement of an offense in an indictment elements which do not go to make up the offense.

In holding that the amendments of the indictments were permissible, we are not unaware of the 1887 decision of the United States Supreme Court in Ex parte Bain.[19] In that case the trial court struck as surplusage from the indictment the allegation that the defendant had sought to deceive the Comptroller of the Currency, leaving the allegation that he intended to deceive agents of the latter. The Supreme Court held that striking such allegation from the indictment violated the fifth amendment guarantee of an indictment by a grand jury. *Bain* is distinguishable. There the court pointed out that it could not be said that there may not have been more than one of the grand jurors who was satisfied that the false report the defendant was alleged to have made was made to deceive the comptroller, but was not convinced that it was made to deceive anyone else. Here we do not have a situation where it could be said that the grand jury might not have indicted appellant if materiality of the alleged false testimony were not an element of the offense. If the grand jury found that certain of appellant's sworn testimony was willfully false and was material to the criminal trial of George Fajeriak, it would follow that the jury would still have found the same testimony to be willfully false even it it had not been necessary to find further that such testimony was on a material matter. As we have held, striking the allegation as to materiality in the indictments was merely amending the indictments as to a matter of form, and a later pronouncement of the United States Supreme Court clearly indicates that the *Bain* case does not prohibit this.[20]

At the Fajeriak trial appellant testified that in October 1965 he had a conversation with a man named Dean Gamradt outside the Penguin Club in Anchorage, at which time Gamradt requested appellant to get him a pistol. It was on the basis of this

17. State v. Witham, 6 Or. 366, 367 (1877); State v. Kalyton, 29 Or. 375, 45 P. 756 (1896).

18. Crim.R. 7(e) provides:

*Amendment of Indictment or Information.* If any error in form shall exist in any indictment or information or in the manner of describing the offense, or if a defendant is indicted by a fictitious or erroneous name and afterwards his true name is discovered, the court may permit the indictment or information to be amended at any time before verdict or finding if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced.

19. 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887).

20. In Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240, 255 (1962), the Court said:
[T]he settled rule in the federal courts [is] that an indictment may not be amended except by resubmission to the grand jury, *unless the change is merely a matter of form.* [Emphasis added]
See also Marsh v. United States, 344 F. 2d 317, 320–322 (5th Cir. 1965).

testimony, which the state claims was false, that one of the perjury indictments was found.

At appellant's trial Dean Gamradt testified that the alleged conversation with appellant outside the Penguin Club had not taken place. This was not enough to justify submitting to the jury the question of whether appellant committed perjury when he testified under oath that there had been such a conversation. In Risher v. State[21] we adopted the rule that there may not be a perjury conviction based on the testimony of one witness alone—that such testimony must be corroborated by other evidence, either direct or circumstantial.

The question here is whether there was such corroboration of Gamradt's testimony. We find there was not. The state relies upon the following evidence as being corroborative: (1) appellant's acquaintance with Fajeriak and his willingness to testify for Fajeriak, (2) the fact that Fajeriak's attorney had not asked Gamradt when he testified at Fajeriak's trial as to the purported conversation with appellant, (3) the fact that during the cross-examination of Gamradt in the Fajeriak case, Fajeriak's attorney had asked no questions of Gamradt concerning a conversation between him and Beckley in October 1965 concerning the purchase of a pistol, (4) the fact that Fajeriak's attorney did not know of appellant's existence until one hour before he put him on the stand, and (5) the fact that appellant had not reported to the police his purported conversation with Gamradt. The first four items are not corroborative of Gamradt's testimony because they have nothing to do with the question of whether or not appellant had met with Gamradt outside the Penguin Club in October 1965 to discuss Gamradt's wish to obtain a pistol. In order to be corroborative evidence must induce a rational belief that what the witness

said is true[22], and this evidence relied upon by the state does not tend to do that. And as to the fifth item—the failure of appellant to report to the police his conversation with Gamradt—there is also no corroboration. For one to ask another to obtain a pistol is not necessarily a criminal matter which would induce the person of whom the request is made to report the incident to the police.

As to the indictment relating to appellant's purported conversation with Gamradt, perjury was not proved and a judgment of acquittal ought to have been entered.

The other perjury indictment accused appellant of willfully making a false statement under oath when he gave the following testimony at the Fajeriak trial:

Q. Did you see him on Thursday, November 11th?

A. No.

Q. Isn't it a fact that you hid Fajeriak out in your house, underneath the floorboards, on Thursday, November 11th?

A. No, that is not a fact.

There was evidence that on November 11, 1965, Fajeriak was being sought on a charge of murder and that police officers were unable to find him after searching the hotel where he was supposed to be staying and the bars he was known to frequent. Mary Walker testified that she rented an apartment along with Robert Walker, who was also known as Robert Wagner, that appellant had lived with her for the approximately two months that she rented the apartment, that appellant had keys to the apartment, and that appellant gave her money to pay the second month's rent. Robert Wagner testified that he had rented the apartment for Mary Walker, that he occasionally lived with her, that on November 8, 1965, he was introduced to Fajeriak at a bar, that on November 11, 1965, after putting snow

21. 418 P.2d 983, 985 (Alaska 1966).

22. Oxenberg v. State, 362 P.2d 893, 896 (Alaska), cert. denied, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961).

tires on Mary Walker's car, he went to put the other tires underneath Mary Walker's apartment and when he lifted the door, Fajeriak was there pointing a pistol at him, that he closed the door on Fajeriak after getting him a glass of water, that he later told appellant to get Fajeriak out of there, that appellant merely shrugged when he was told this, that when he returned to the apartment later Fajeriak was gone, and that he, Wagner, had no keys to the apartment. In addition, there was evidence that Mary Walker did not know Fajeriak, and that appellant did know Fajeriak and that Fajeriak had been dating appellant's step-daughter.

All of this evidence relied upon by the state to show that appellant's testimony was false was circumstantial, i. e., the falsity of appellant's testimony had to be inferred from evidentiary facts that did not include any evidence that would conclusively show that appellant had hid Fajeriak out beneath the floor boards of the apartment house where appellant lived.[23] In Risher v. State[24], as we have noted, we applied the rule that there may not be a perjury conviction based on the uncorroborated testimony of one witness alone. This rule has been construed by a number of courts as meaning that the falsity of testimony alleged to be perjurious must be established either by the testimony of two witnesses or of one witness corroborated by other facts and circumstances, and the majority of courts that have so interpreted the rule have held that circumstantial evidence alone is not sufficient to prove perjury.[25]

We do not go so far. The rule that one may not be convicted of perjury

on the uncorroborated testimony of one witness was to prevent ill-founded retaliatory attacks by perjury prosecution upon a witness on no more than the contrary oath of another.[26] As the United States Supreme Court has said:

> Since equally honest witnesses may well have differing recollections of the same event, we cannot reject as wholly unreasonable the notion that a conviction for perjury ought not to rest entirely upon "an oath against an oath." The rule may originally have stemmed from quite different reasoning, but implicit in its evolution and continued vitality has been the fear that innocent witnesses might be unduly harassed or convicted in perjury prosecutions if a less stringent rule were adopted.[27]

If the purpose of the rule will not be thwarted by permitting a conviction on circumstantial evidence alone, then there is no reason to apply the more stringent rule that such evidence by itself is never sufficient. That is the situation here. Wagner testified that he saw Fajeriak underneath the floor of the apartment house where appellant lived. He also testified that when he told appellant to get Fajeriak out of there, appellant merely shrugged. This created an inference that appellant knew of the situation, for otherwise it is reasonable to assume that he would have denied knowing anything about Fajeriak's presence underneath the house. Granted that this sworn testimony of Walker would not be sufficient alone to convict appellant of perjury, because all we would have here would be "an oath against an oath"[28] —appellant's oath against Wagner's. But there was evidence other than the testimony

**23.** Allen v. State, 420 P.2d 465, 467 (Alaska 1966); Jennings v. State, 404 P.2d 652, 654 (Alaska 1965).

**24.** 418 P.2d 983, 985 (Alaska 1966).

**25.** Vuckson v. United States, 354 F.2d 918, 920 (9th Cir.), cert. denied, 384 U.S. 991, 86 S.Ct. 1896, 16 L.Ed.2d 1007, reh. denied, 385 U.S. 893, 87 S.Ct. 27, 17 L.Ed. 2d 127 (1966); People v. Roubus, 65 Cal. 2d 218, 53 Cal.Rptr. 281, 417 P.2d 865, 867 (1966); 3 R. Anderson, Wharton's Criminal Evidence § 956.1 (12th ed. 1955,

Supp.1968); Annot., 88 A.L.R.2d 852, 856, 859 (1963).

**26.** United States v. Collins, 272 F.2d 650, 652, 88 A.L.R.2d 847 (2d Cir. 1959), cert. denied, 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619, reh. denied, 362 U.S. 957, 80 S.Ct. 859, 4 L.Ed.2d 874 (1960).

**27.** Weiler v. United States, 323 U.S. 606, 609, 65 S.Ct. 548, 550, 89 L.Ed. 495, 498, 156 A.L.R. 496 (1945).

**28.** Id.

of Wagner, which tended by inference to establish that appellant's denial of concealing Fajeriak was untrue. It was shown that appellant knew Fajeriak—presumably quite well—since Fajeriak was dating appellant's stepdaughter and since appellant had offered to testify for Fajeriak at his trial. It was shown that Fajeriak was missing on the day in question. It was shown by the testimony of Mary Walker that appellant lived in the house where Wagner had seen Fajeriak, and that he had keys to the house. It was shown that Mary Walker did not know Fajeriak, and that Wagner had only met him once—the inference from this being that Mary Walker and Wagner had no motive to hide Fajeriak. All of this evidence, taken together with Wagner's testimony, although circumstantial, is sufficient we believe to justify submitting to the jury the question of whether appellant committed perjury when he denied hiding Fajeriak. We do not have here merely one oath against another. Appellant was convicted not merely on the sworn testimony of Wagner, but on other evidence also that corroborated the inference raised from Wagner's testimony. The criterion here is not whether there was direct evidence, such as the testimony of a witness who observed appellant hiding Fajeriak out beneath the house, corroborated by other facts and circumstances. The test is whether all of the evidence taken together, although circumstantial, is of a quality to assure that a guilty verdict was solidly founded.[29] We believe that it was.

What we have just said disposes of appellant's contention that a judgment of acquittal ought to have been granted as to the perjury indictment and the indictment charging appellant with being an accessory after the fact to the crime of murder for which Fajeriak was convicted. Considering the facts in the record most favorable to the state and such reasonable inferences as the jury may have drawn from them, we believe that fair minded men in the exercise of reasonable judgment could have differed on the question of whether appellant's guilt had been established beyond a reasonable doubt. Therefore, the case was properly submitted to the jury for its determination.[30]

The basis for one of the two perjury indictments was appellant's response to the question: "Isn't it a fact that you hid Fajeriak out in your house, underneath the floorboards, on Thursday, November 11th?" Appellant answered: "No, that is not a fact." Appellant contends that his answer to the question was literally accurate and technically responsive since the house where Fajeriak was hiding was not "his" (appellant's) house, and therefore that he cannot be found guilty of perjury.

We disagree. The term "your house" as used in the prosecutor's question does not necessarily refer to a house owned by appellant. In common parlance "your house" could refer to the place where one lived, whether as an owner or a tenant. There is little doubt that appellant knew perfectly well what house was being referred to, i. e., the apartment house where he lived. If it had been otherwise, the natural thing for appellant to have said was that he didn't have a house, which he did not do.

Appellant also argues that since the prosecutor's question related to "Thursday, November 11th", without specifying the year, the negative answer given by appellant was technically responsive. Again, we disagree. Earlier questioning of appellant by the state indicated quite clearly that the year 1965 was being talked about and not some other year.

Appellant's final point is that the conviction for perjury must be set aside

**29.** United States v. Bergman, 354 F.2d 931, 934 (2d Cir. 1966); United States v. Collins, 272 F.2d 650, 652, 88 A.L.R.2d 847 (2d Cir. 1959), cert. denied, 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619, reh. denied, 362 U.S. 957, 80 S.Ct. 859, 4 L.Ed.2d 874 (1960).

**30.** Fuller v. State, 437 P.2d 772, 776 (Alaska 1968); Gargan v. State, 436 P.2d 968, 969 (Alaska 1968).

because the deputy clerk of court who administered the oath to appellant before he testified in the Fajeriak trial had no authority to administer oaths. It is true that express statutory authority to administer oaths was not conferred upon deputy clerks of court until 1967 which was after the Fajeriak trial.[31] But in this case the deputy clerk testified that she administered the oath to appellant under the direction of the court, and it is generally held that an oath administered in open court under the direction of the court by one performing the duty of a clerk is an oath administered by the court.[32] The oath derives its sanction and validity from the circumstance that it was duly administered in open court with the approval and under the control of the court, as it was here. We hold that the oath was validly administered to appellant so that false testimony given under oath would constitute perjury.

The judgment is modified by setting aside the conviction and sentence in Case No. 66–260 Cr. and, as so modified, is affirmed.

RABINOWITZ, Justice, (dissenting in part).

I disagree with the majority's holding that materiality is not an essential element of the crime of perjury under Alaska law. In reaching this conclusion, the majority has departed from the rule of statutory construction which was adopted in City of Fairbanks v. Schaible.[1] There, in regard to a municipality's liability for torts, we said:

> It then became the law in Alaska by reason of the well established rule that a statute adopted from another state, which has been construed by that state's highest court, is presumed to be adopted with the construction thus placed upon it.

> By the act of June 6, 1900, Congress made further provision for a civil government for Alaska. This was a far more comprehensive statute than the act of 1884. It did not merely incorporate by reference the general laws of Oregon. It spelled out the law in detail in a criminal code, a code of criminal procedure, a political code, a code of civil procedure, and a civil code. According to Thomas Carter, who compiled and annotated these laws in 1900, 'The codes were mainly copied from the statutes of the State of Oregon, and to the end that adjudications by the Supreme Court of that state might remain as directly in point as possible, changes were sparingly made in the text of sections.'

The portion of the 1900 act which is pertinent here is section 334. It provided that an action may be maintained against any incorporated town, school district, or other public corporation of like character in the district of Alaska, in its corporate character, and within the scope of its authority, 'or for an injury to the rights of the plaintiff arising from some act or omission of such public corporation.' Except for lack of reference to a 'county' (there being no county form of government in Alaska), the quoted language was almost identical with the like provision in the Oregon statute of 1862. Having been taken from Oregon laws, it is presumed that it was adopted with the interpretation that had been placed upon it by the Oregon Supreme Court prior to 1900. And since this language has never been changed in Alaska and was part of the law existing at the time of Mrs. Schaible's death, it is logical to hold that it had the same meaning then that it had when construed by decisions of the Oregon Supreme Court between 1869 and 1886.

31. SLA 1967, Ch. 23, § 1, AS 22.20.035.

32. 3 R. Anderson, Wharton's Criminal Law & Procedure § 1300 at 66 (10th ed. 1957).

1. 375 P.2d 201, 207–208 (Alaska 1962) (footnotes omitted).

In my opinion *Schaible* is dispositive of the materiality issue in the case at bar. Here the perjury section of the 1899 Act of Congress "was almost identical with the like provision" in the laws of Oregon.[2] Prior to the 1899 congressional enactment, the Supreme Court of Oregon had consistently construed the Oregon perjury statute as requiring the element of materiality.[3] To my knowledge, this same construction had been accorded Alaska's perjury statute by Alaska's territorial courts and state trial courts until the superior court's ruling in the case at bar. Before holding that AS 11.30.010(a), with its severe penalty, is a false swearing statute, I believe a stronger showing should have been made that the *Schaible* canon of statutory construction is inapplicable. I concur in all other aspects of the court's opinion.

2. Law of Oct. 19, 1864 § 598; Hill's Ann. Laws of Oregon § 825 (1892).

3. State v. Witham, 6 Or. 366, 367 (1877).